IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRICIA MOORE, | No. C 06-3897 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No.s 8, 23] |
| GENESCO, INC.., | |
| Defendant. | |

This matter is before the Court on Plaintiff's Motion to Remand [Docket No. 8] and Plaintiff's Request for Judicial Notice [Docket No. 23]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing.

**BACKGROUND**

Plaintiff Tricia Moore ("Plaintiff") is a citizen of the State of California. Compl. at ¶ 4. The purported class members are also citizens of the State of California. *Id*.

Defendant Genesco, Inc. ("Defendant") is a corporation incorporated under the laws of the State of Tennessee, with its principal place of business in the State of Tennessee. Not. of Removal at ¶ 5(b).

Plaintiff and the purported class members are or were employed by Defendant in the State of California within the four years preceding the filing of this Complaint. Compl. at ¶ 4.

Plaintiff and the purported class members claim that they have received wages from Defendant in the form of checks issued by an out of state bank. *Id.* These checks had no in-state address for presentation, and Plaintiff and the purported class members a) were given no notification

1  of any provision for negotiating such paychecks in California at no cost, b) were required to pay a
2  fee to cash their paycheck, and/or c) had a hold placed on their paychecks. *Id*.

3  On May 18, 2006, Plaintiff filed this action on behalf of herself, all others similarly situated,
4  the general public, and all aggrieved employees. Plaintiff's Complaint is a class action stating three
5  causes of action: 1) issuance of out of state paychecks in violation of California Labor Code § 212;
6  2) claims for civil penalties pursuant to California Labor Code § 2699; and 3) unfair and unlawful
7  business practices in violation of California's Unfair Competition Law, California Business &
8  Professions Code § 17200. Compl. at ¶¶ 16-32.

9  On June 22, 2006, Defendant removed the action to this Court, on the basis of diversity
10 jurisdiction, pursuant to 28 U.S.C. § 1332(a).

11 On July 18, 2006, Plaintiff filed the instant Motion to Remand.

12 On August 29, 2006, Defendant filed its Opposition.

13 On September 5, 2006, Plaintiff filed its Reply.

## LEGAL STANDARD

**A.     Motion to Remand for Lack of Subject Matter Jurisdiction**

The federal removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court . . . may be removed by the defendant or the defendants" to federal court on the basis of federal question or diversity jurisdiction. 28 U.S.C. § 1441(a); *Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977).

In a motion to remand, the burden of proving the propriety of removal rests with the removing party. *Abrego v. Dow Chemical* Co., 443 F.3d 676, 685 (9th Cir. 2006); *United Computer Systems v. AT&T Corp*., 298 F.3d 756, 763 (9th Cir. 2002). The district court must remand a case to state court if, at any time before final judgment, the court determines that it lacks subject matter jurisdiction. 28 U.S.C § 1447(c).

In order to remove on the basis of diversity jurisdiction, the parties must be citizens of different states and the amount in controversy must exceed $75,000, exclusive of interests and costs.

2

28 U.S.C. § 1332(a).

Alternatively, the Class Action Fairness Act ("CAFA") grants federal subject matter jurisdiction for "any civil action," where 1) the number of members of all proposed plaintiff classes in the aggregate is 100 or more, 2) the claims of the individual class members, in the aggregate, exceed the sum or value of $5,000,000 exclusive of interest and costs, and 3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d).

The removal statutes are strictly construed against removal, and if there is any doubt as to the propriety of removal, the lawsuit must be remanded to state court. *Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685, 690 (9th Cir. 2006) (citations omitted).

The party alleging jurisdiction must justify those allegations by a preponderance of evidence. *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-404 (9th Cir. 1996).

## ANALYSIS

In its Notice of Removal, Defendant argued that the case satisfies the federal diversity jurisdiction standard because a) complete diversity exists between the parties and b) aggregating the claims of the alleged individual class members yields a matter in controversy in excess of $75,000, exclusive of interest or costs. Not. of Removal at ¶ 5(a) and (c). In its Opposition to Plaintiff's Motion to Remand, Defendant presents alternative arguments for federal diversity jurisdiction, arguing 1) that Plaintiff's claim alone states claims in excess of the $75,000 and 2) that the proposed class satisfies the CAFA standards for diversity jurisdiction. As a preliminary matter, Defendant may present these arguments, even though they were not asserted originally in the Notice of Removal. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (holding that a district court may treat an opposition brief as an amendment to the notice of removal). In her Motion to Remand, Plaintiff argues that Defendant is unable to satisfy its burden of proof in showing that the amount of

3

1  controversy is satisfied on any of these three theories.[1]  Reply at 2.  For the reasons stated below, the
2  Court finds that none of Defendant's arguments are availing and GRANTS Plaintiff's Motion to
3  Remand, except insofar as it requests attorneys' fees.

**A.     Plaintiff's Individual Claim**

First, Defendant argues that Plaintiff's individual claim can satisfy the $75,000 amount in controversy requirement for federal diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a). Defendant argues that the following claims for relief satisfy the amount in controversy: 1) statutory civil penalties under the Private Attorneys General Act ("PAGA"), California Labor Code § 2699; 2) restitution for costs incurred for check cashing fees and/or bank holds under California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*; 3) an injunction under the UCL requiring Defendant to comply with all requirements of California Labor Code § 212; 4) all damages available for violations of California Labor Code § 212; and statutory attorneys' fees.  Opp. at 2.

Defendant argues that Plaintiff was employed by Defendant from October 4, 2004, through July 3, 2005.  Opp. at 2 (citing Dunn Decl. at ¶ 2).  Because the statute of limitations for statutory civil penalties under PAGA is one year, Cal. Code. Civ. P. § 340(a), Defendant argues that Plaintiff may seek to recover penalties for at least three pay periods that fall within the limitations period. Opp. at 3.  Under PAGA, "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."  Cal. Labor Code § 2699.  Assuming that the three pay periods are "subsequent violation[s]," Defendant argues that Plaintiff may recover $600 in statutory civil penalties.  Opp. at 3.

Defendant argues that the statute of limitations for restitution under the Unfair Competition Law is four years.  Cal. Bus. & Prof. Code § 17208.  Plaintiff has not alleged the amount of fees

---

[1] Neither party contests Defendant's assertion that complete diversity exists between Plaintiff and Defendant.  They argue over only the amount in controversy.

4

1 which were charged for cashing her checks nor the loss associated with holds placed on her
2 accounts.  Defendant thus seeks to calculate the maximum possible amount of restitution.  Defendant
3 calculates that Plaintiff's average biweekly pay check would have had a net face value of
4 approximately $1,203.84 (assuming 12% withholding and deductions).  Opp. at 3.  Defendant
5 observes that the maximum that may be charged by a check cashing service for a payroll check is
6 3% of the check, if the individual can present identification.  Cal. Civ. Code § 1789.35(a).
7 Assuming a 3% fee, applied against the 21 payroll checks that Plaintiff received during the period in
8 which she was employed during the UCL limitations period, Dunn Decl. at ¶ 2, Defendant calculates
9 approximately $756 in check cashing fees.  Opp. at 3.

10       Together, Defendant calculates that Plaintiff states a claim for $1,356 in both penalties and
11 restitution.  Defendant then adds attorneys fees to this figure to calculate $83,356 as the total amount
12 in controversy on Plaintiff's individual claim.  The Ninth Circuit has held that "where an underlying
13 statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such
14 fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150,
15 1156 (9th Cir. 1998).  In this case, California Labor Code § 2699 provides for recovery of attorneys'
16 fees.  Cal. Lab. Code § 2699(g)(1) ("Any employee who prevails in any action shall be entitled to an
17 award of reasonable attorney's fees and costs.").  Defendant calculates that Plaintiff's counsel will
18 spend a combined minimum of 6 full 40-hour work weeks working on this case from inception
19 through to a jury trial.  Opp. at 5.  Given Plaintiff's counsels' hourly rates, Defendant calculates that
20 Plaintiff will seek $82,000 in attorneys' fees.  Opp. at 5.  Defendant states that "[i]f Plaintiff disputes
21 this estimate, Defendant invites Plaintiff to stipulate in writing before this Court to a lesser cap on
22 the attorneys' fees which may be recovered."  Opp. at 5 n. 2.

23       In her Reply, Plaintiff accepts Defendant's challenge to stipulate to a cap on the amount of
24 attorneys' fees which she may seek to recover for Plaintiff's individual claim.  Plaintiff's counsel
25 states that "counsel for plaintiff hereby represents that the total value of plaintiff's individual claims,
26 as [pled] in the complaint on file in this action, do not exceed $74,999.000, including recoverable
27
28

5

fees and costs." Grover Decl. at ¶ 5.  Plaintiff has the power to cap her own request for attorneys' fees and does so in such a way as to guarantee that Plaintiff's individual claim will never exceed $74,999.00.  The Court therefore finds that Defendant fails to prove by a preponderance of evidence that Plaintiff's individual claim satisfies the amount in controversy, pursuant to 28 U.S.C. § 1332(a).

**B.     Aggregating Class Claims Pursuant to 28 U.S.C. § 1332(a)**

In the Notice of Removal, Defendant argued that "aggregating the claims of the alleged individual class members as alleged in the Complaint" results in an amount in controversy in excess of $75,000, exclusive of interests or costs.  Not. of Removal at ¶ 5(c).  In *Gibson*, the Ninth Circuit held that the claims of multiple plaintiffs may be aggregated to satisfy the amount in controversy threshold only if the multiple plaintiffs "unite to enforce a single title or right, in which they have a common and undivided interest." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 943-44 (9th Cir. 2001). "Aggregation is appropriate only where a defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *Id.* at 944 (quotation omitted).  Aggregation is thus appropriate only where the cases involves "a single indivisible res" and concerns "matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Id.*  By contrast, aggregation is not appropriate where the claims in a case "are each cognizable, calculable, and correctable individually," even though they might rest on a "common legal theory." *Id.* at 945. The Ninth Circuit in *Gibson* held that claims from multiple plaintiffs against a car manufacturer for the use of "defective electrocoat finish techniques" could not be aggregated, because a) the damages "can be traced to particular transactions involving individual plaintiffs, each of whom can sue [the defendant] for disgorgement of this per-vehicle profit" and b) "[r]ecovery by one plaintiff in this case would not, as a legal matter, either preclude or reduce recovery by another." *Id.* at 945. Plaintiff accurately argues that, pursuant to *Gibson*, aggregation does not apply in the instant case, because each proposed class member could bring an individual claim for being issued an improper paycheck and being forced to pay fees to obtain his or wages, without affecting the remaining employees' ability to bring their own suits.  Mot. at 5; Reply at 6.

6

1  In its Opposition, Defendant does not dispute Plaintiff's argument, but argues instead only
2 that Defendant had a "good faith and objectively reasonable belief" in pursuing jurisdiction on the
3 basis of aggregation and thus should not be subject to an award of attorneys fees for improper
4 removal. Opp. at 15-16. Defendant fails to support its original theory of removal, but argues instead
5 only that the "common and undivided interest" test is "not always crystal clear." Opp. at 15
6 (quoting *Gibson*, 261 F.3d at 944). The proposed Amended Notice of Removal attached to
7 Defendant's Opposition, Defendant, notably, does not re-assert its theory of aggregation in support
8 of Removal. Opp., Ex. 2. Rather, the proposed Amended Notice of Removal, as well as
9 Defendant's Opposition, relies solely on Defendant's new theories of removal: 1) the value of
10 Plaintiff's individual claims and 2) CAFA.

11 Because Defendant has failed to prove that the claims of the individual class members may
12 be aggregated, the Court finds Defendant's original theory of jurisdiction to be unavailing.

### C.  CAFA

14 Defendant argues that the proposed class action qualifies for diversity jurisdiction, pursuant
15 to CAFA, because the claims of the individual class members, in the aggregate, exceed the sum or
16 value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). Defendant provides the
17 following calculations in support of this theory:

18 First, Defendant argues that within the statute of limitations period for PAGA, Defendant
19 issued approximately 16,238 hard-copy checks to its California employees. Opp. at 6. Defendant
20 expects that Plaintiff will argue that after a single check is issued, all later checks constitute
21 "subsequent violations" for the purposes of PAGA, thus warranting civil penalties of $200 per
22 employee, per pay period. *Id.* Defendant thus calculates the total civil penalties at $3,247,500 [(1 x
23 $100) + (16,237 x $200)]. Opp. at 6.

24 Second, Defendant averages Plaintiff's estimated payroll check value with the hypothetical
25 payroll check value of an employee earning slightly more than minimum wage, to calculate an
26 average payroll check value of $918.72. Opp. at 7. Defendant assumes that a check cashing service

7

1 will charge 3% of the value of the payroll check—the maximum allowable by California state law,
2 when identification is provided by the party seeking to cash the check.  Cal. Civ. Code § 1789.35(a).
3 Defendant multiples the 56,514 hard copy payroll checks issued to California employees during the
4 applicable statute of limitations period by 3% and by the hypothetical average paycheck value to
5 yield approximately $1,557,525 in potential restitution for check cashing fees.  Opp. at 7.

6       Third, Defendant assumes a "loss" of $1.50 for "bank holds placed on accounts" of
7 prospective class members and multiples this number by the 56,514 paychecks to increase the
8 restitution value by an additional $84,771.  *Id.*

9       Fourth, Defendant values Plaintiff's sought-after injunctive relief "requiring [Defendant] to
10 provide paychecks to its California employees that meet all of the requirements of Labor Code
11 Section 212" at several thousand dollars.  Opp. at 8.  Defendant assumes that it will incur at least this
12 amount in administrative and clerical working time to make the necessary changes.  *Id.*

13       Finally, Defendant values attorneys' fees at approximately $192,000, based on its
14 calculations regarding the amount of work involved for Plaintiff's attorneys and their hourly billing
15 rates.  *Id.* at 9.

16       Defendant adds the above figures—leaving out its rough estimation of the value of the
17 injunction—to yield an amount in controversy in excess of $5,081,000—an amount slightly in
18 excess of the $5,000,000 threshold established by CAFA.  Opp. at 9.

19       In her Reply, Plaintiff disputes Defendant's calculations.  For the purposes of the instant
20 motion, Plaintiff states that she "will accept" Defendant's attorneys' fees calculation and the cost of
21 injunctive relief.  Reply at 8.  Even with these assumptions, Plaintiff argues that Defendant has
22 failed to prove, by a preponderance of evidence, that the CAFA amount in controversy is satisfied.

23       First, Plaintiff argues that Defendant has, without any factual evidence, argued that every
24 paycheck that it issued was cashed for a fee.  Plaintiff argues that some of Defendant's employees
25 likely deposited their checks in their own bank without incurring a check cashing fee.  Reply at 10.
26 Plaintiff argues that "[i]f just 10% of the payroll checks were not subject to a fee, the estimate of

28       8

1  [restitution] damages using Defendant's numbers would drop by $155,742 (5,651 checks x 27.56,

2  the check fee estimate by Defendant)." Reply at 10.  Plaintiff also observes that Defendant assumes

3  that every one of the 56,514 checks that were subject to a check cashing fee were also subject to a

4  hold.  Plaintiff argues that checks cannot be subject to both: "If you pay a check cashing fee, you get

5  cash back immediately.  If you deposit the check subject to a hold, you do not pay a fee.  Not only

6  does Defendant double count, it simply makes up a value of the hold [$1.50] out of thin air." *Id.*

7  Plaintiff observes that Defendant supplied no evidence to show why this $1.50 amount is an

8  appropriate estimate. If 10% of the checks were subject to a hold instead of a fee, Plaintiff argues,

9  Defendant's claimed damages would be reduced by another $76,294.50.

10        Second, Plaintiff questions Defendant's hypothetical average paycheck value.  Plaintiff

11 observes that while Defendant "admits to having access to payroll records," Dunn Decl. at ¶ 2,

12 Defendant did not provide any facts from those records to show any basis for the hypothetical

13 payroll value it uses in its check cashing fee calculations.  Defendant instead, simply averages

14 Plaintiff's wages with those of a fictional person making $9 per hour.  Plaintiff argues that, if

15 anything, Defendant's calculates inflate the actual average wage amount: Plaintiff was a manager,

16 and there is no evidence to show that half of the employees earned a manager's wage.  Plaintiff

17 argues that a weighted average based on factual evidence of the number of persons at each wage

18 level would have produced a more accurate estimate.

19        Finally, Plaintiff argues that the most significant exaggeration in Defendant's math is its

20 assertion that the fee paid was always 3% of the paycheck.  Plaintiff observes that this fee was

21 assumed without any evidentiary support demonstrating that the marketplace actually charges a 3%

22 check cashing fee.  Plaintiff averaged the fees actually charged by nine check cashing companies in

23 California and found that the average fee charged was approximately 1.89% of the check amount.[2]

---

[2] Plaintiff seeks judicial notice of a printed website page advertising check cashing rates and an excerpt from the SBC Yellow pages advertising check cashing fees, pursuant to Fed. R. Evid. 201(b). The Court GRANTS Plaintiff's request for judicial notice of these advertisements as the content of the advertisements is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

1 Plaintiff argues that, assuming Defendant's hypothetical paycheck value, using the figure of 1.89%,
2 instead of 3%, lowers the total restitutionary claims by $576,442.

3 In sum, Plaintiff argues that Defendant has provided insufficient factual support for its
4 calculations and that a more accurate estimate of the total class claims would be lower than
5 $5,000,000.

6 Plaintiff's arguments are convincing. The Court finds that Defendant's assumptions and
7 rough calculations fail to prove by a preponderance of evidence that the claims of the proposed class
8 satisfy CAFA's minimum amount in controversy.

### D.     Leave to Amend

Defendant requests leave to amend its Notice of Removal, in order to allege its theories of jurisdiction based on Plaintiff's individual claim and CAFA. Opp. at 12. Defendant argues that a formal amendment is not necessary as the Court may treat an opposition brief as an amendment to the Notice of Removal. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002). However, to the extent that formal amendment is necessary, Defendant has attached a proposed amended Notice of Removal to its Opposition. This proposed amended Notice of Removal reiterates the arguments discussed above. As these arguments are insufficient to prove, by a preponderance of evidence, that the amount in controversy is satisfied, the Court DENIES Defendant's request for leave to amend its Notice of Removal.

### E.     Attorneys' Fees

Plaintiff requests that the Court award Plaintiff attorneys' fees, pursuant to 28 U.S.C. § 1447(c), because Defendant had "no objectively reasonable basis for removal." *Patel v. Del Taco, Inc.*, 446 F.3d 996, 999 (9th Cir. 2006) (affirming an award of attorneys fees on that basis). 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." In the instant case, however, Defendant claims that Plaintiff failed to contact or attempt to contact Defendant before

---

201(b).

filing the instant Motion for Remand. Meckley Decl. at ¶ 3. Plaintiff does not dispute this statement. As Defendant argues, this is in violation of the Court's Standing Orders, which require that parties meet and confer before filing any motion. Opp. at 1. Because Plaintiff failed to meet and confer with Defendant before filing the instant motion, the Court DENIES Plaintiff's request for attorneys' fees.

## **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT Plaintiff's Motion to Remand is GRANTED, except insofar as it requests attorneys' fees; the Court DENIES Plaintiff's request for attorneys' fees.

IT IS FURTHER ORDERED THAT Plaintiff's request for judicial notice is GRANTED, and Defendant's request for leave to amend the Notice of Removal is DENIED.

IT IS FURTHER ORDERED THAT the case is REMANDED to the Superior Court of the State of California in and for Alameda County. The clerk is directed to terminate any pending matters and to close the file.

Dated: 9/20/06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

11